741 So.2d 112 (1999)
STATE of Louisiana, Appellee,
v.
Raymond KUNZMAN, Appellant.
No. 31976-KA.
Court of Appeal of Louisiana, Second Circuit.
May 5, 1999.
*113 Louisiana Appellate Project By Peggy J. Sullivan, Monroe, Counsel for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Traci A. Moore, Assistant District Attorney, Counsel for Appellee.
Before PEATROSS, KOSTELKA, DREW, JJ.
PEATROSS, J.
Defendant, Raymond Kunzman, was convicted, by a unanimous jury, of attempted armed robbery arising from an incident that occurred on August 9, 1997. Subsequent to that conviction, a second bill *114 of information was filed by the State charging Defendant as a second-felony habitual offender based on a prior felony conviction for unauthorized use of an access card. Defendant was adjudicated an habitual offender for which the sentencing range was 24.75 to 99 years. The trial court believed that a deviation from the minimum sentence under the habitual offender statute was appropriate and sentenced Defendant to serve ten years at hard labor with credit for time served without benefit of parole, probation or suspension of sentence. This court, on a writ application by the State requesting review of the sentences of Defendant and Gass as illegally lenient, reversed and remanded the cases to the trial court for resentencing of both defendants. State v. Gass and Kunzman, 31,816-KW c/w 31,817-KW (La. App.2d Cir.1/20/99), 728 So.2d 896.
The matter is currently before this court a second time, on appeal by the Defendant. Defendant has assigned the following three errors: (1) the evidence was insufficient to support a conviction of attempted armed robbery; (2) the trial court erred in adjudicating Defendant a second-felony offender and (3) the trial court erred in qualifying Deputy Steven Joe as an expert and allowing him to give expert opinion testimony. For the reasons stated herein, Defendant's conviction for attempted armed robbery is affirmed; however, adjudication as a second-felony habitual offender is set aside and, pursuant to our order of remand and resentencing in Gass and Kunzman, supra, we now order the trial court to resentence Defendant in accord with this opinion, as a first-time felony offender.

FACTS
On August 8, 1997, Defendant and his companion, Johnny Gass ("Gass"), went out to a tank battery site owned by Petrol Industries, Inc., where Gass' ex-stepfather, Clifton Brian ("Brian"), worked. Brian was late for work that morning, and the two men tired of waiting for him and left. On their way out, they passed Brian on the road. Early on the morning of August 9th, the two men again drove in Defendant's car to the tank battery site to wait for Brian.
Defendant and Gass both admitted that they intended to take Brian's wallet that morning. In his statement to the police, which was played for the jury, Gass stated that he needed money and believed Brian always carried a large sum of cash. Defendant voluntarily turned himself in to the Caddo Parish Sheriff's Office and provided a detailed statement of the events of August 9th to Darwin Jones, an investigator with the sheriff's department. In that statement, Defendant reported that Gass had been talking about doing this for about a year and had told him that Brian always carried substantial amounts of money on him, from $5,000 to $10,000.
When Brian arrived that morning, he had just started to work when he heard a voice in the bushes yell, "Hey." At trial, Brian testified that he turned around and yelled back, "Hey," did not see anybody, so turned back around. Gass then came from behind the saltwater tank and began hitting Brian with what Defendant described as "some kind of rubber thing with lead in it or something." In his statement to police, Gass referred to the object, which was described in the bill of information to be a billy club, as a "slapjack." Brian fought back, hitting Gass on the head with an oil gauge. At some point during the attack, Brian recognized Gass, and said "Johnny quit beating me. I have no money."
Defendant told Investigator Jones that when Gass yelled for help he came out from the bushes and grabbed Brian by the back of the neck. Defendant, however, could not maintain his grip because Brian was wet and oily. Defendant stated that he hit Brian in the head three or four times with his fist, but denied ever hitting him with the slapjack. Brian testified that Defendant was trying to drown him.
*115 After beating Brian but failing to secure his wallet, Gass left the scene and Defendant followed. The two men then left the area in Defendant's car. Defendant told Investigator Jones that he did not know what condition Brian was in when they left.
Brian testified that Defendant and Gass attempted to take his wallet, but that when he pushed the wallet back into his pocket, they jerked his hand and broke his finger. After Defendant and Gass left the scene, Brian crawled toward his truck, but could not get over the fence. He then flagged down Alvin Jackson, a pumper who worked in a neighboring field. Mr. Jackson testified that he stopped to help Brian who was bleeding and appeared to have been badly beaten. Mr. Jackson called his supervisor, who sent down Billy McKenzie, who in turn had the supervisor call an ambulance and the police. Mr. McKenzie testified that Brian told the police that he lost his watch and a gauge line; however, the police could not locate either item due to the muddy and wet condition of the area. Mr. McKenzie proceeded to look around the area and found the gauge line and a homemade club, or blackjack, which conformed to Brian's description of the weapon.
Brian was transported to the hospital in Vivian, and then transferred to LSU Medical Center ("LSUMC"). Investigator Jones contacted Brian at LSUMC and testified that Brian had several lacerations to his head, several large bruises with blood clots in them, several bruises to his stomach, a fracture of the fourth digit on his left hand and a cut to the thumb on his left hand.

DISCUSSION

Assignment of Error number 1: Sufficiency of the Evidence[1]
The issue of the sufficiency of the evidence to convict is properly raised by a motion for post-verdict judgment of acquittal under La.C.Cr.P. art. 821. While no such motion appears in this record, in State v. Green, 28,994 (La.App.2d Cir.2/26/97), 691 So.2d 1273, this court ruled that it would consider sufficiency complaints raised as assignments of error even in the absence of such a motion.
Defendant submits that the evidence adduced at trial failed to prove beyond a reasonable doubt the requisite elements of the crime of attempted armed robbery. Armed robbery is "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." La. R.S. 14:64. Defendant's argument is based solely on his assertion that the instrumentality used to commit the crime against Brian was not a dangerous weapon; therefore, by the definition of the crime given us by La. R.S. 14:64, Defendant could not have committed an attempted armed robbery. We disagree with Defendant on the specific issue of whether the "slapjack" was a dangerous weapon, and include the discussion of that issue in the following review of the totality of the evidence presented by the State.
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); *116 State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347. Under Jackson, supra, the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992).
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La. App.2d Cir.9/25/98), 719 So.2d 610.
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333; State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir. 1986), writ denied, 499 So.2d 83 (La.1987).
After review of the trial transcript, we find sufficient evidence to support Defendant's conviction of attempted armed robbery. At trial, the State had the burden of basically proving two crimes beyond a reasonable doubt, i.e. attempt and armed robbery. Attempt is defined by La. R.S. 14:27 as follows:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
Furthermore, "... lying in wait with a dangerous weapon with the intent to commit a crime ... shall be sufficient to constitute an attempt to commit the offense intended." La. R.S. 14:27(B).
The jury determined that Defendant had the requisite specific intent to commit a crime, which they easily deduced from Defendant's confession, which included the following statements to Investigator Jones:
Investigator Jones: Where werewhat were y'all going down there for?
Defendant: Just to rob that man. I was gonna hide in the bushes and when I said hey, he'd turn around and Johnny hit him in the head and we was gonna take his money and go.
Investigator Jones: Had y'all talked about this prior to going up there?
Defendant: Yeah.
Investigator Jones: How long ago was is when y'all talked about it?
Defendant: A few days.
Defendant further stated:
Investigator Jones: ... So the plan was what when y'all got over there?
Defendant: Justthe whole plan was just I'd say hey as he went up beside the tank battery that Johnny was standing behind and when he turned around and seelook who it was, he was just gonna hit him in the back of the head to knock him out `cause Johnny had been telling me that the man had gotten ten thousand dollars or somethingfive *117 thousand dollarshe always carried five thousand he knows for sure in his pocket and no telling about about eight or nine thousand in his wallet. And Johnny said he'd hit him in the back and we'd take it and go.
Finally, the jury heard the following statement by the Defendant:
Investigator Jones: Okay. At what point did y'all discuss the actual robbing of him?
Defendant: ProbablyI don't know. Lately, it was like Monday or last weekend, SundaySaturday or Sunday, I think.
The State also introduced evidence of the armed robbery, which is defined by La. R.S. 14:64(A) as "... the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." Defendant's statement to Investigator Jones shows that he and Gass used force in their attempt to take Brian's money. In fact, the jury heard Defendant describe to Investigator Jones how Gass hit Brian "[a] bunch of times ... [on] the back of the head, face... [with] some kind of rubber thing with lead in it or something." Defendant also admitted that he hit Brian with his fist "... three or four times in the head."[2]
The jury also considered the testimony of the victim regarding the incident. Brian testified as follows:
A. I turned and looked; then Johnny Gass started hitting me with the club.
Q. Do you know how many times he hit you?
A. Oh, six (6) or eight (8) times.
Q. And what did the person, who had yelled "Hey" from the bushes do?
A. He came up on my side and put my head under the water and tried to drown me.
Q. While this was happening was anybody trying to get into the pocket of your pants?
A. Yes, ma`am.
Q. Could you tell which one (1) of the two (2) people it was?
A. I couldn't tell which one (1).
Q: What did you do? What were they trying to do?
A. They was trying to get the billfold out of my pocket, and they kept beating me and beating me.
Brian's testimony establishes that Defendant used force in his attempt to take Brian's money.
Regarding Defendant's specific challenge to the sufficiency of evidence of a dangerous weapon, we find that Defendant's own statement to Investigator Jones, coupled with Brian's testimony, establishes that a dangerous weapon was used against Brian in the commission of the crime. Moreover, the testimony of Deputy Steven Joe, the propriety of which is discussed infra, clearly establishes the dangerous nature of the weapon used against Brian.
La. R.S. 14:2(3) defines a dangerous weapon as "any ... instrumentality which, in the manner used, is calculated or likely to produce death or great bodily harm." At trial, Deputy Joe was shown the object used on Brian, and he stated that it looked like a homemade blackjack. He considered it an impact weapon which would be used to strike people. Deputy Joe also testified that there existed a high *118 probability of major damage if such a weapon was used on a person's head or neck. Deputy Joe deemed the object to be a dangerous weapon; and when shown pictures of Brian's injuries, he opined that, based on the accepted law enforcement definition of great bodily harm, Brian had sustained such injuries.
Viewing the evidence in the light most favorable to the prosecution, a rational jury could have found that Defendant committed the offense of attempted armed robbery; thus, the evidence was sufficient under Jackson v. Virginia, supra. This assignment of error is without merit.

Assignment of Error Number 3: Qualification of Deputy Steven Joe as an expert witness

The trial court accepted the State's witness, Deputy Steven Joe, as an expert in the field of defensive tactics and impact weapons, and, in so doing, allowed his opinion testimony regarding the nature of the object used in the crime. Defendant submits that during the voir dire as to Deputy Joe's qualifications, there was no testimony that impact weaponry was a recognized field of expertise; and, even if it was a recognized field of expertise, the information put forth regarding Deputy Joe did not establish such expertise. Defendant argues that the testimony of Deputy Joe affected the ultimate issue to be decided; and, thus, it should be closely scrutinized to determine whether he was qualified to render the opinion that he did. Defendant further takes the position that, absent Deputy Joe's opinion that the object used in the crime was a dangerous weapon, there would be insufficient evidence on which to base a conviction of attempted armed robbery pursuant to La. R.S. 14:27 and 14:64. We find Defendant's arguments to be without merit.
Before any witness can testify as an expert, his or her competence must be established to the satisfaction of the court. State v. Honeyman, 565 So.2d 961 (La.App.2d Cir.1990), citing, State v. Trosclair, 443 So.2d 1098 (La.1983), cert. dismissed, 468 U.S. 1205, 104 S.Ct. 3593, 82 L.Ed.2d 889 (1984); State v. Watson, 449 So.2d 1321 (La.1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985). Competence of an expert is a question of fact to be determined within the sound discretion of the trial judge and his rulings on the qualifications of experts will not be disturbed in the absence of manifest error, that is, unless they are clearly wrong. State v. Honeyman, supra.
The test of the competency of an expert is his knowledge of the subject about which he is called upon to express an opinion. State v. Honeyman, supra; State v. Sherer, 411 So.2d 1050 (La.1982), on appeal after remand, 437 So.2d 276 (La.1983); State v. Ruple, 437 So.2d 873 (La.App. 2d Cir.1983). A combination of specialized training, work experience and practical application of the expert's knowledge can combine to demonstrate that a person is an expert. State v. Honeyman, supra; State v. Smith, 448 So.2d 778 (La. App. 2d Cir.1984). A person may qualify as an expert based on experience alone. State v. Honeyman, supra; State v. Smith, supra.
La. C.E. art. 702 states:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
Comment (d) thereto states that "[b]road discretion should be accorded the trial judge in his determination as to whether expert testimony should be held admissible and who should or should not be permitted to testify as an expert."
As previously stated, the State introduced Deputy Joe as an expert in defensive tactics and impact weaponry. The State's voir dire of the witness revealed that he was one of the chief instructors for *119 the Caddo Parish Sheriff's Office in impact weapons and the PR-34 straight baton and had been teaching for the sheriff's department since 1989 or 1990. He also had taught at the Bossier Parish and Shreveport police academies. He described an impact weapon as being any instrument that a person would use to strike another person. Deputy Joe expressed familiarity with a billy club, or blackjack, which he described as an impact weapon used for striking techniques to subdue an individual. Although the Caddo Parish Sheriff's Office did not train in the use of the blackjack, Deputy Joe expressed his responsibility, as an impact weapons instructor, to have knowledge of all impact weapons that the officers might come across in their profession. Finally, Deputy Joe had qualified before as an expert in various police fields, those being special weapons, shotgun and submachine gun and edge weapons and the use of marshal arts weapons and defensive tactics. Based on this information elicited from the witness, the trial court properly found Deputy Joe to be an expert in defensive tactics and impact weaponry and permitted him to testify accordingly. The combination of Deputy Joe's specialized training, work experience and practical application of his knowledge supports the trial court's qualifying him as an expert witness and such qualification was clearly not an abuse of discretion.

Assignment of Error Number 2: Defendant's adjudication as a second-felony habitual offender

In this assignment of error, Defendant contends that the guilty plea forming the basis of the prior offense used to adjudicate him an habitual offender was inadequate. Defendant argues that his October 1995 guilty plea for unauthorized use of an access card cannot be used as a predicate in the habitual offender proceeding at the trial court, because he was not advised at that time that he had a right to a trial by jury; thus, he did not make a voluntary and knowing waiver of that right. Additionally, Defendant argues that the bill of information from the prior conviction was not properly certified; thus, it failed to establish that he was indeed a multiple offender. Since, for the following reasons, we find merit in Defendant's argument, we must set aside the adjudication as a second-felony habitual offender and remand the matter to the trial court for resentencing.[3]
*120 Louisiana's habitual offender law, La. R.S. 15:529.1(D)(1)(b), states, in pertinent part:
Except as otherwise provided in this Subsection, the district attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact.... A person claiming that a conviction or adjudication of delinquency alleged in the information was obtained in violation of the Constitutions of Louisiana or of the United States shall set forth his claim, and the factual basis thereof, with particularity in his response to the information. The person shall have the burden of proof by a preponderance of the evidence, on any issue of fact raised by the response....
In State v. Shelton, 621 So.2d 769 (La. 1993), the Louisiana Supreme Court discussed the state's burden of proof in a habitual offender proceeding as follows:
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving the defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights. (Footnotes omitted.) (Emphasis ours.)
Assuming that the State has met its initial burden of proving the existence of the prior guilty plea and that Defendant was represented by counsel when the plea was accepted, the burden shifts to Defendant to produce affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the pleas. Only if Defendant does this, does the burden shift to the State to prove that the pleas were constitutional through a "perfect" transcript or some other means. State v. Shelton, supra. Thus, we must examine Defendant's argument that his constitutional rights were infringed on to determine whether he has met his burden.
In order for a guilty plea to be valid, it is necessary for the accused to make a knowing and intelligent waiver of three constitutionally guaranteed fundamental rights. Those rights are the privilege against compulsory self-incrimination, the right to trial by jury and the right to confront one's accusers. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); State v. Jones, 28,929 (La.App.2d Cir.4/2/97), 691 So.2d 858.
A guilty plea will not be considered free and voluntary unless, at the very least, the court advises the defendant of the triad of rights as annunciated in Boykin, supra, and Louisiana jurisprudence. Indeed, an express and knowing waiver of those rights must appear on the record, and an unequivocal showing of a free and voluntary waiver cannot be presumed. Boykin, supra; State v. Nuccio, 454 So.2d 93 (La.1984); State v. Morrison, 599 So.2d 455 (La.App. 2d Cir.1992). Furthermore, the trial court cannot rely on an assumption that defense counsel adequately informed the defendant of his rights. *121 State v. Williams, 384 So.2d 779 (La.1980); State v. Morrison, supra.
In State v. Age, 417 So.2d 1183 (La. 1981), Justice Calogero, writing for the court on rehearing, held that "[a] record only evidencing a general advisement of the right to trial and the waiver thereof does not affirmatively show that the defendant knowingly and voluntarily waived his right to trial by jury." (Emphasis original.) In that case, the defendant argued on appeal that the trial court erred in finding him a multiple offender. The defendant contended that he was not properly Boykinized before he pled guilty to a prior offense of simple robbery; and, accordingly, the prior conviction could not be used to convict him of being a second offender. Specifically, he was not informed of his right to a jury trial. In Age, the trial court did not have the benefit of reviewing the transcript from the defendant's guilty plea, but only had the waiver of rights form, which the supreme court found deficient. As concerned the defendant's advisement of his right to a jury trial, the form only provided that he had a "right to trial and free appeal if convicted" and that he "waives right to trial and free appeal by entering plea of guilty." Justice Calogero determined that there was no affirmative showing that the defendant in Age was either advised of his right to a jury trial or that he waived that right; therefore, he did not make a knowing and voluntary waiver of his right to a jury trial. The court concluded that because the record failed to affirmatively establish that Age knowingly and voluntarily waived his right to trial by jury, the guilty plea conviction should not have been used as a basis for the multiple-offender charge against him. The habitual-offender adjudication was reversed. Id. See also, State v. Santiago, 416 So.2d 524 (La.1982) (a guilty plea form that included a general waiver of the right to trial, but failed to include mention of the right to trial by jury was not constitutionally valid).
This court has previously determined that failure to advise a defendant of his right to jury trial before accepting a guilty plea is error patent. State v. Morrison, supra. In Morrison, as in the instant case, the defendant was advised by the trial judge of his right to trial, but the transcript failed to reveal advisement of that defendant's right to a jury trial. In Morrison, there was only an oblique reference to the defendant's right to a jury trial; and this court determined that, "[u]nder such circumstances, the accused did not receive an adequate explanation of his right to a jury trial." Id. This was determined to be error patent, and Morrison's conviction was reversed. See also, State v. McHenry, 573 So.2d 590 (La.App. 2d Cir.1991) (failure to advise defendant of the right to a jury trial precludes a finding that the guilty plea was knowingly and intelligently entered).
Based on the jurisprudence, we conclude that Defendant was not properly Boykinized when he entered his guilty plea in 1995 to unauthorized use of an access card in 1995. Defendant's guilty plea in that predicate offense, therefore, may not be used as a basis for an habitual-offender charge against him. As such, we find that Defendant has met his burden as required by La. R.S. 15:529.1; and, therefore, under Shelton, supra, the onus is on the State to rebut Defendant's proof by introducing a "perfect" transcript of the taking of the guilty plea. The transcript has been introduced and is obviously "imperfect."[4] In the absence of a perfect transcript, we must set aside the guilty plea taken in the predicate offense and remand the matter for resentencing of Defendant as a first-time felony offender.

CONCLUSION
For the reasons stated herein, Defendant's conviction for attempted armed robbery *122 is affirmed; his adjudication as a second-felony habitual offender is set aside; and, pursuant to our previous remand in State v. Gass and Kunzman, 31,816 c/w 31,817 (La.App.2d Cir.1/20/99), 728 So.2d 896, the trial court is ordered to resentence Defendant in accord with this opinion, as a first-time felony offender.
CONVICTION OF ATTEMPTED ARMED ROBBERY AFFIRMED; HABITUAL OFFENDER ADJUDICATION SET ASIDE; REMANDED FOR RESENTENCING.
NOTES
[1] Assignments of error numbers 1 and 3 are more logically discussed in successive order and, therefore, will be addressed first; assignment of error number 2 will be discussed last.
[2] It is not an issue whether or not Defendant actually used the dangerous weapon himself to commit the crime on Brian because he is considered a principal to the crime pursuant to La. R.S. 14:24, which states:

All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime are principals.
[3] The State argues that this assignment of error should not be heard because the defense failed to comply with the applicable law, that being Louisiana's habitual offender statute, La. R.S. 15:529.1(D)(1)(b). Under that statute, the State recognizes its burden to prove any issue of fact beyond a reasonable doubt. As the State further points out, the statute also provides in pertinent part that:

The presumption of regularity of judgment shall be sufficient to meet the original burden of proof. If the person claims that any conviction or adjudication of delinquency alleged is invalid, he shall file a written response to the information. A copy of the response shall be served upon the prosecutor.... Any challenge to a previous conviction or adjudication of delinquency which is not made before the sentence is imposed may not thereafter be raised to attack the sentence.
Since Defendant did not file a written response to the bill of information, the State maintains that this assignment is not properly before this court and should not be considered.
As the State noted, Defendant made no written motion to quash the habitual offender bill of information. Technically, it would appear that Defendant is barred from attacking the validity of the prior offenses on appeal because the proper procedural steps were not taken under La. R.S. 15:529.1(D)(1)(b). Defendant did, however, make an oral motion to quash the second-felony habitual offender bill of information at the habitual offender hearing, only after the trial court had adjudicated him as an habitual offender. The trial court accepted the oral motion, reviewed the guilty plea transcript and allowed argument. We conclude, therefore, that the State's position that the assignment of error should not be heard is unwarranted and that Defendant should be allowed to address the issue on appeal.
[4] There is no need for an evidentiary hearing, as the State suggests, because the evidence that the state would be required to put forth, i.e., a "perfect" transcript, is already a part of the record before the court and is shown to be "imperfect" on its face.