850 So.2d 973 (2003)
STATE of Louisiana, Appellee,
v.
Leroy GIPSON, Jr., Appellant.
No. 37,132-KA.
Court of Appeal of Louisiana, Second Circuit.
June 25, 2003.
*975 Wilson Rambo, Paula Corley Marx, Lafayette, Louisiana Appellate Project, for Appellant.
Paul J. Carmouche, District Attorney, William J. Edwards, Assistant District Attorney, for Appellee.
Before WILLIAMS, GASKINS and MOORE, JJ.
MOORE, J.
Leroy Gibson, Jr. ("Gipson") was charged by bill of information with armed robbery. Gipson proceeded to trial after which a 12-member jury found him guilty of armed robbery in violation of R.S. 14:64, and following the filing of a habitual offender bill, he was adjudicated a second felony offender. The District Court then imposed a sentence of 75 years at hard labor without benefits, to be served consecutive with any parole or other sentence being served. Gibson now appeals, asserting the following assignments of error:
1. That the evidence presented at trial was legally insufficient to sustain Gibson's conviction;
2. That the trial court erred in denying defense counsel's challenge for cause of juror Richard Davenport;
3. That the trial court erred by imposing an excessive sentence on Gibson;
4. That the trial court erred in allowing John T. Adams to testify as an expert in the science of fingerprint identification; and,
5. That the trial court erred in admitting documents at the multiple-bill sentencing hearing, as the admissions violated La. C.E. art. 803 and R.S. 15:529.1 F and failed to prove that Gibson was a second felony offender.
We affirm the conviction and sentence.

Factual Background
On January 27, 1999, at approximately 8:50 p.m., James Whorton and his wife, Gloria, owners of Britt's Grocery in Shreveport, were working in their store when two black males walked into the store wearing bandanas over their faces, sunglasses, and baseball caps as a disguise. Both men were carrying handguns. No one else was in the store at that time. The principal assailant, the shorter of the two robbers, approached the front counter, where Mr. Whorton was standing, and demanded money. Mr. Whorton went to one of his registers and took out $30.00 and surrendered it to the robber. The robber then demanded "the rest of the money," jumped over the counter and pressed the handgun against Mr. Whorton's chest/rib area. Mr. Whorton then advised the robber that there was more money in his back room. The robber commanded Mr. Whorton to get the money. Both men went to the back room. Once inside the room Whorton quickly grabbed *976 his 12-gauge shotgun, turned and shot the robber who was walking behind him. The robber ran and jumped back over the counter and fell to the floor. Mr. Whorton then shot the other perpetrator who was standing next to the doors and then fired a final blast at the robber lying on the floor. Both robbers then fled the store, leaving behind a handgun, a pair of sunglasses, a hat, and a trail of blood. Mrs. Whorton called police and an investigation ensued. Shreveport Police Officer McConnell was dispatched to the store to investigate the scene and then to LSUS Medical Center to see if the wounded robbers had sought medical attention.
An hour and a half after the robbery, Shreveport Police Detective Porter and other officers were dispatched to a house located at 1651 Woodrow Street in Shreveport, which is a mile or two from the robbery scene. Upon arrival, Detective Porter and the other officers found one black male, identified as Leroy Gipson, Jr., sitting on a couch and suffering from shotgun wounds to his left shoulder and right thigh area. In the kitchen, officers discovered another black male, identified as James Wilson ("Wilson"), who was propped up against the refrigerator sitting in a pool of his own blood, suffering from a shotgun wound to his left arm. The location and number of gunshot wounds to Wilson and Gipson were consistent with Mr. Whorton's account of his shotgun discharges. Also, Detective Porter testified that he retrieved a box of .38 caliber bullets from the home where Wilson and Gipson were found; according to Mrs. Whorton and Wilson, Gipson used a .38 caliber handgun in the robbery.
Both men were taken to LSU hospital where they received treatment. Wilson's arm had to be amputated. Gipson and Wilson were charged with armed robbery. Through a plea and sentence agreement, Wilson pled guilty to the armed robbery charge and received a sentence of eight years at hard labor without the benefit of parole, probation, or suspension of sentence. In exchange for the plea agreement, Wilson testified at Gipson's trial that he and Gipson were the armed robbers in the instant case and that Gipson was the assailant who held Mr. Whorton at gunpoint, took the $30.00 from Mr. Whorton and followed him to the back room of the store.
Mr. Whorton testified that two black males, one noticeably shorter than the other, entered his store that night and robbed him at gunpoint; the shorter robber was the one who pulled a gun on him and took the $30.00 from the register drawer. Mr. Whorton further testified that the shorter of the two robbers followed him to the back room where he retrieved his shotgun and shot the shorter robber two times. Lastly, Mr. Whorton testified that he also shot the taller robber before he could get away.

Discussion: Sufficiency of the Evidence
To prove Gipson guilty of armed robbery, the state had to prove beyond a reasonable doubt that Gipson took something of value belonging to another from the person of another or in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. La. R.S. 14:64.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based upon proof sufficient for any trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime proven beyond a reasonable doubt. See also, State v. Bosley, 29,253 (La.App. 2 Cir. 4/02/97), 691 *977 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.3d 1333.
The reviewing court must defer to the trier of fact's rational credibility calls, evidence weighing and inference drawing. State v. Mussall, 523 So.2d 1305 (La.1988). It is not the function of the court to assess credibility or re-weigh evidence. State v. Marcantel, 00-1629 (La.4/03/02), 815 So.2d 50. In the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Jackson, 33,837 (La.App. 2 Cir. 9/27/00), 768 So.2d 767, writ denied, 00-3078 (La.11/02/01), 800 So.2d 864.
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.8/30/02), 827 So.2d 508.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La. App.2d Cir.9/18/02), 828 So.2d 622.
In cases involving a defendant's claim that he was not the person who committed the crime, the Jackson standard requires the state to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Powell, 27,959 (La.App. 2 Cir. 4/12/96), 677 So.2d 1008, writ denied, 96-1807 (La.2/21/97), 688 So.2d 520. The Jackson standard is applicable in cases involving both direct and circumstantial evidence. Positive identification by only one witness may be sufficient to support a defendant's conviction. State v. Davis, 27,961 (La.App. 2 Cir. 4/8/96), 672 So.2d 428, writ denied, 97-0383 (La.10/31/97), 703 So.2d 12.
Through the testimony of Mr. and Mrs. Whorton, the state showed that two men robbed them at Britt's Grocery and one of the robbers was shorter than the other one. Mr. Whorton testified that the shorter robber was carrying a .38 special handgun when he entered the store, approached him and demanded money. Mr. Whorton testified that the shorter robber jumped over the counter, put the gun against his ribs, and followed him to the back room to retrieve more money. The record indicates that Gipson is about 5'7" tall, while Wilson is about 5'11" tall. Mr. Whorton also testified that he fired two close-range shotgun blasts at the shorter robber, who dropped his handgun and left a trail of blood, and one medium-range blast at the taller robber. Ninety minutes later, police found Gipson and Wilson at Gipson's house; both men were suffering from shotgun wounds consistent with Mr. Whorton's testimony. Police also recovered, from Gipson's house and shoulder, buckshot pellets consistent with Mr. Whorton's shotgun and a box of .38 ammo for the handgun left behind by the shorter robber. This direct testimony and physical evidence is more than sufficient to prove, beyond a reasonable doubt, that Gipson committed the armed robbery at Britt's Grocery Store.
Moreover, Gipson's codefendant, Wilson, positively identified him as the other perpetrator of the robbery. It is true that Wilson gave contradictory statements, initially admitting that he himself held the gun on Mr. Whorton, but later identifying Gipson as the gunman. It is also true that *978 Wilson received considerable leniency, through the plea and sentence agreement, from the state. However, the jury was fully aware of these facts and evidently accepted Wilson's trial testimony. In view of the strong physical evidence, we cannot say the jury abused its discretion in this regard. With Wilson's testimony, the state negated any reasonable probability of misidentification.
Finally, the jury obviously rejected the testimony of Gipson's mother, Rosie Fisher, and his prison cell-mate, Alan Ortega, who claimed that Gipson sustained his injuries in some other incident. On this record, we see no abuse of the jury's discretion. This assignment of error lacks merit.

Challenge For Cause
Gipson next argues that during voir dire, prospective juror Richard Davenport ("Davenport") displayed an inability or refusal to accept and apply the privilege against self-incrimination at a trial. Gipson asserts that defense counsel was forced to use a peremptory challenge to excuse Davenport from the jury pool. He contends that since defense counsel exhausted all peremptory challenges during jury selection, prejudice is presumed.
The state argues that Davenport stated in voir dire that he would weigh the evidence and not hold against the defendant the fact that he would not testify. The state further contends that Davenport recognized that Gipson had a right to not testify. The state argues that Davenport displayed a willingness to decide the case impartially according to the law and the evidence. The state concludes its argument asserting that the trial court's decision denying defendant's challenge of Davenport for cause was correct.
The trial judge is vested with broad discretion in ruling on challenges for cause, and his ruling will be reversed only when a review of the entire voir dire reveals the judge abused his discretion. State v. Cross, 93-1189 (La.1995), 658 So.2d 683, citing, State v. Robertson, 630 So.2d at 1278 (La.1994); State v. Ross, 623 So.2d 643, 644 (La.1993).
To prove there has been reversible error warranting reversal of the conviction and sentence, defendant need only show (1) the erroneous denial of a challenge for cause; and (2) the use of all his peremptory challenges. See, Cross, supra; Robertson, supra; Ross, supra; State v. Comeaux, 514 So.2d 84, 93 (La.1987).
Louisiana Code of Criminal Procedure article 797(2) states in pertinent part that "an opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence."
A challenge for cause is often unwarranted where a prospective juror at first expresses an opinion prejudicial to the defendant, but upon further inquiry demonstrates the ability and willingness to decide the case impartially by listening to the evidence and following the trial court's instructions. See, State v. Eastin 419 So.2d 933 (La.1982); State v. Heard, 408 So.2d 1247 (La.1982); State v. Claiborne, 397 So.2d 486 (La.1981); State v. Ellis, 28,282, (La.App. 2 Cir. 6/26/96), 677 So.2d 617, writ denied, 688 So.2d 521 (La.1997); State v. Wiley, 614 So.2d 862 (La.App. 2 Cir.1993).
Davenport repeatedly stated that he would weigh the evidence and trusted he would not give any negative weight to the fact that Gipson might exercise his right against testifying as reflected in pages 394-395 of the trial court record. We find *979 that Davenport's responses to defense counsel's inquiries did not rise to a level of partiality that would have a prejudicial effect on Gipson's defense. Upon further inquiry by defense counsel, Davenport demonstrated "the ability and willingness to decide the case impartially by listening to the evidence and following the trial court's instructions. Therefore, a challenge for cause is unwarranted." Heard, supra; Ellis, supra; Claiborne, supra.
Specifically, Gipson argues that during voir dire Davenport showed that he would not accept the law as given to him by the court regarding Gipson's right not to testify in his own defense, which, it is alleged, would give rise to a challenge for cause. La.C.Cr.P. art. 797(4) states as grounds for a challenge for cause: "The juror will not accept the law as given to him by the court." As reflected in the questioning by Gipson's defense counsel, Davenport stated that he "hoped" he would be able to follow the law, weigh the evidence and put aside his personal belief that Gipson should take the stand if he is innocent.
Similarly in Ellis, supra, a prospective juror stated she would "wonder" about defendant's failure to testify, but that her "wondering" would "not really" enter into her decision. This court found that her statements did not amount to such a refusal to apply the law as to subvert the trial court's ruling which denied the challenge. Ellis at 624. Likewise, in State v. Hattaway, 28,060 (La.App. 2 Cir. 5/8/96), 674 So.2d 380, writ denied, 685 So.2d 141 (La. 1997), a prospective juror stated she would "like" to hear Hattaway's testimony, yet she consistently stated that she would not hold Hattaway's right not to testify against him and that she understood and accepted his right not to testify. Hattaway at 385. This court found no error in the trial court's refusal to sustain a challenge for cause as to this potential juror. Id; cf., State v. Isgitt, (La.App. 3 Cir.1991), 590 So.2d 763.
The record is devoid of any indication that Mr. Davenport was unwilling to apply the correct law as the court advised him and the trial court did not abuse its discretion in denying his challenge for cause. This assignment is without merit.

Excessive Sentence
Next, Gipson argues that although proportionality in sentencing of co-defendants is not required as a matter of law, the difference in the trial court's sentencing of Wilson (8 years) and him (75 years) should offend a sense of fairness and constitutes manifest error by the court. Gipson further contends that there is no way the court could determine who was the primary actor in the robbery and therefore the disparity of treatment coupled with the uncertainty of the actual facts and manner in which the offense was accomplished makes the defendant's sentence excessive.
The state argues that Gipson's previous criminal history was sufficient to justify the sentence. The state further contends that Gipson had been convicted twice before for the crime of armed robbery, and arrested for similar crimes in the past, but the charges were not pursued. The state asserts that the trial court particularized the sentence to Gipson.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La.C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. See, State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App.2d Cir.6/24/98), 715 So.2d 641. The articulation of the factual *980 basis for a sentence is the goal of La. C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La.C.Cr.P. art. 894.1. See, State v. Lanclos, 419 So.2d 475 (La.1982).
The second inquiry requires an examination of the circumstances of the case and the background of the defendant. A sentence is constitutionally excessive if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. See, State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. See, State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864; State v. Richardson, 545 So.2d 714 (La.App. 2d Cir.1989).
There is no requirement that co-defendants be treated equally by the sentencing judge. See, State v. Rogers, 405 So.2d 829 (La.1981); State v. Taylor, 485 So.2d 117 (La.App. 2d Cir.1986). The disparity of sentences between co-defendants is only a factor to be considered along with all other appropriate considerations in evaluating a contention that a sentence is excessive. See, State v. Quimby, 419 So.2d 951 (La.1982); State v. Jackson, 30,473 (La.App.2d Cir.5/13/98), 714 So.2d 87.
A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of discretion, the reviewing court will not set aside a sentence as excessive. See, State v. Square, 433 So.2d 104 (La.1983).
At the time Gipson committed this offense, armed robbery carried a sentence of 5 to 99 years of imprisonment without the benefit of parole, probation or suspension of sentence. La. R.S. 14:64 B. In this instance, Gipson was adjudicated as a second felony habitual offender and consequently, his enhancement exposed him to a sentence range of 49 ½ to 198 years. Following consideration of La.C.Cr.P. art. 894.1, the trial court sentenced Gipson to 75 years at hard labor without the benefit of parole, probation, or suspension of sentence. Prior to imposition of sentence, the trial judge reviewed a pre-sentence investigation report prepared by the Department of Corrections. This report, referenced during the sentencing hearing, shows that Gipson was classified as a third felony offender with two previous, multiple-count armed robbery convictions. The most recent conviction preceding the instant charge, and which formed the predicate for the habitual offender adjudication, was entered in 1976, when Gipson was sentenced to three concurrent terms of 33 years each, consecutive to any other sentence.
During its consideration of La.C.Cr.P. art. 894.1, the trial court found that "the defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution and that a lesser sentence than jail would deprecate the seriousness of the offense." The trial court also found aggravating circumstances such as the fact that Gipson used a dangerous weapon during the commission of the crime, he used threats of or actual violence during the commission of the crime and he made threats on the lives of the victims in the instant case.
In light of the trial court's considerations and reasoning, the 75-year sentence does not appear to be an abuse of discretion by the trial court, neither does it *981 shock the conscience of this court, given Gipson's criminal history. We find the record supports the trial court's sentence of Gipson and this assignment is therefore without merit.

Admissibility of Evidence
Gipson argues that state's exhibit 4(S-4), an arrest sheet, and state's exhibit 7(S-7), a computer printout of the records of the Department of Corrections, both relating to him, were erroneously admitted during the habitual offender hearing. Gipson contends that exhibit S-4 is merely an arrest record and does not reference any convictions and exhibit S-7 is not an arrest record, but a computer screen printout. Gipson argues that the state failed to present testimony as to how the records were kept, and whether or not they could be manipulated, changed, or updated; therefore, exhibit S-7 should not have been introduced as evidence against him.
Particularly, Gibson objected at the hearing to the introduction of the penitentiary packet and the documents found therein. The state contends that the items were admissible under State v. Hunt, 573 So.2d 585 (La.App. 2d Cir.1991).
Copies of the bill of information and judgment, certified as true copies of the originals by the deputy clerk of the district court, were also self-authenticating under La. C.E. arts. 902(1) (domestic public documents under seal) and 904, as well as under the prior evidence law. Hunt, supra. See also, State v. Rowell, 306 So.2d 668 (La.1975).
La. R.S. 15:457 provides, "a copy of a document, certified to by the officer who is the legal custodian of the same is equivalent to the original in authenticity." Rowell, supra.
Louisiana Revised Statute 15:459 provides,
Whenever, during the trial of any criminal case, either party may desire to offer in evidence any record, paper or document belonging to the files or records of the court in which the trial is proceeding, the presiding judge shall, at the request of such party, direct the clerk to produce such record, document or paper, in order that the same may be used in evidence; and it shall not be necessary for the clerk in any such case to make a copy of such record, document or paper.
Any records on file with the clerk of court, and otherwise admissible in a judicial proceeding, may be introduced into evidence in the form of originals or certified copies. It is unnecessary for the clerk or deputy clerk of court to personally appear and testify as to the authenticity of such records. Rowell, supra.
At trial the state introduced as exhibit S-4, a certified copy of the photostatic copy of microfilm of an arrest record sheet. This sheet contained Gipson's name and address at the time of his arrest, the crime he was arrested for (armed robbery of the Norma Street Grocery in Shreveport), his driver's license number, his date of birth, facts surrounding the robbery, witnesses' names and addresses, and Gipson's inked fingerprint. The state used this arrest sheet in addition to the bill of information to show that Gipson was arrested approximately four days after the robbery of Norma Street Grocery occurred and convicted of that robbery in 1976, in Caddo Parish. This was properly certified under R.S. 15:459 and relevant. Gipson's reasoning as to why the arrest sheet should not have been admitted is meritless.
The defendant's argument that S-7 was erroneously admitted lacks merit, as well. Although the state improperly referred to their exhibit S-7 as the penitentiary packet, *982 the trial court realized this error, and reasoned that because the documents were certified by the custodian of records, they were deemed authentic for the purposes of the hearing, and therefore admissible.
At trial, the state proved Gipson's habitual offender status by competent evidence legally sufficient to support the habitual offender adjudication. This assignment is without merit.

Qualification of Expert
Lastly, Gipson urges as error that the state's expert fingerprint witness, John Adams ("Adams"), was not certified in the science of fingerprint identification and thus should not have been allowed to qualify as an expert. Gipson asserts that there were other individuals in Adams' office who are certified in fingerprint identification who could have been called as an expert witness, but were not called by the state. Gipson further argues that because Adams has his work reviewed by his supervisors, he is unqualified to give an expert opinion independent of his supervisors.
The state argues that Adams worked in the identification department for 10 years and that his training was ongoing and constant. The state also notes that Adams had been accepted as an expert in the First Judicial District Court in seven prior trials. Furthermore, the state contends that Adams has reviewed thousands of fingerprints as part of his job and qualifies as an expert.
Before any witness can testify as an expert, his or her competence must be established to the satisfaction of the court. LSA-C.E. art. 702; State v. Kunzman, 31,976 (La.App.2d Cir.5/5/99), 741 So.2d 112; State v. Esteen, 02-1241 (La.App.5 Cir.4/29/03), 846 So.2d 167. Competence of an expert is a question of fact to be determined within the sound discretion of the trial judge and his rulings on the qualifications of experts will not be disturbed in the absence of manifest error, that is, unless they are clearly wrong. See, Kunzman, supra at 118, citing State v. Honeyman, 565 So.2d 961 (La.App. 2 Cir.1990).
The test of the competency of an expert is his knowledge of the subject about which he is called upon to express an opinion. Kunzman, supra at 118. A combination of specialized training, work experience, and practical application of the expert's knowledge can combine to demonstrate that a person is an expert. Kunzman, supra at 118, citing State v. Smith, 448 So.2d 778, 780 (La.App. 2d Cir.1984). A person may qualify as an expert based on experience alone. Kunzman, supra; State v. Smith, supra.
The trial court found that Adams had received basic and advanced training and education in the field of fingerprint identification, had worked in this field for 10 years, and had testified as an expert in seven previous proceedings in the First Judicial District Court. Adams testified that he has compared thousands of inked fingerprints in the course of his work. He explained that it is an office policy that confirmed fingerprint matches be reviewed by a co-worker in the office. According to his testimony, Adams' conclusions on fingerprint matches, upon co-worker review, have never been incorrect.
From our review of the record, the trial court did not err in qualifying Adams as an expert in the science of fingerprint identification. This assignment is without merit.

Conclusion
For the foregoing reasons, Gipson's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.