990 So.2d 109 (2008)
STATE of Louisiana, Appellee
v.
Carlos T. LEWIS, a/k/a, Appellant Carlous T. Lewis.
No. 43,402-KA.
Court of Appeal of Louisiana, Second Circuit.
August 13, 2008.
Rehearing Denied September 11, 2008.
*111 Louisiana Appellate Project, by Carey J. Ellis, III for Appellant.
Carlos T. Lewis, Pro Se.
Robert W. Levy, District Attorney, John L. Sheehan, Assistant District Attorney, for Appellee.
Before STEWART, CARAWAY & PEATROSS, JJ.
PEATROSS, J.
Defendant, Carlos T. Lewis, was charged with distribution of cocaine, a violation of La. R.S. 40:967; after a jury trial, Defendant was convicted of attempted distribution of cocaine, a violation of La. R.S. 14:27 and La. R.S. 40:967. Defendant was adjudicated a third-felony offender; and, under La. R.S. 15:529.1(A)(1)(b)(ii), the court sentenced Defendant to life imprisonment at hard labor without benefit of parole. Defendant now appeals, urging nine assignments of error. For the reasons stated herein, we affirm.

FACTS
On March 8, 2006, two deputies with the Union Parish Sheriff's Office ("UPSO"), working with a confidential informant, conducted an anti-narcotics operation in *112 Farmerville, Louisiana. The deputies engaged the informant, Mr. Dale Owens, to contact would-be drug dealers in order for the deputies to identify and arrest the dealers. Owens, who was paid for his participation, used his cell phone to call Defendant and arrange a meeting between Owens and Defendant at a convenience store where Owens was to buy crack cocaine from Defendant. The deputies did not hear Defendant speaking to Owens.
Prior to the meeting, UPSO Deputy William Gilbert searched Owens' vehicle to ensure that Owens had no contraband. Deputy Gilbert then installed audio and video recording equipment in Owens' vehicle to record the transaction. Meanwhile, UPSO Deputy John Harrell searched Owens' person to ensure that Owens was not in possession of any narcotics prior to the transaction. Deputy Harrell then gave Owens $40 in cash as "buy" money.
As Owens went to the convenience store, the two deputies drove to a church parking lot approximately 200 yards from the store and parked. Deputy Gilbert, equipped with binoculars, watched the transaction while Deputy Harrell listened to the events through a wireless microphone. Deputy Gilbert saw Defendant drive up to the store in a blue car; the deputy explained that he had seen Defendant driving around town in this car in the past. Deputy Gilbert watched as Defendant got out of the car and walked over to Owens' vehicle; but, when Defendant reached the truck, Deputy Gilbert could not see what Defendant did there because there was an obstruction between Deputy Gilbert and the driver's side of Owens' truck. Nevertheless, Deputy Gilbert said that the person who approached Owens' truck "appeared to look like [Defendant]...."
While Defendant was standing beside Owens' truck, Deputy Harrell listened as the two talked about obtaining the phone number of a third party and then Owens talked with Defendant about buying an ounce of cocaine at a later time, to which Defendant answered that the price would be $800. The two did not discuss their current transaction as it occurred.
Although Deputy Harrell had seen [Defendant] prior to these events, he had never talked to Defendant and did not recognize his voice.
Owens testified that he had known Defendant for a few weeks before the date of this operation. Owens said that, when Defendant came up to his truck, Defendant gave Owens the rocks of cocaine and Owens gave Defendant the buy money. Owens was positive that Defendant was the person who sold him the drugs. On cross-examination, it was revealed that Owens had an extensive criminal record which included at least three prior drug convictions. Owens related that he had assisted police with "close to a hundred" drug buys and that he was compensated for his work.
After the transaction, Owens drove away and met the deputies; Owens was out of the deputies' sight for several minutes. Deputy Harrell retrieved two whitish objects from Owens. Laboratory testing proved that these objects were crack cocaine. Deputies Harrell and Gilbert later viewed the videotape of the transaction made from Owens' truck and confirmed that the seller was Defendant. To protect the ongoing investigation and the then-confidential informant, Defendant was not arrested for this offense until several months later. The buy money was not recovered.
The presentation of evidence at Defendant's trial commenced on February 28, 2007. That morning, the UPSO transported Defendant from jail to the courthouse. Two of the jurors, Ms. Monica Barbarich and Ms. Robin Worth, were standing outside *113 the courthouse when Defendant was brought in. Defendant saw the jurors and apparently informed the court about what had occurred, and the court treated the matter as a motion for new trial. The court questioned the jurors about what they had seen. Ms. Barbarich said that she had seen Defendant coming in; but, when she realized who he was, she "made a point not to look anymore." She said that she was not surprised to know that Defendant had been arrested at some point, and she explained that this fact did not affect her ability to be fair and impartial. She said that she had only mentioned seeing Defendant to Ms. Worth, although it was possible that other jurors could have overheard what she said. She did not mention anything about seeing handcuffs or shackles or any type of restraints on Defendant. Ms. Worth testified that she had seen the van pull up to the building, but that she never saw Defendant. She also affirmed that she could be fair and impartial. After hearing the jurors, the court stated:
They have both indicated convincingly, their demeanors on the stand and their answers themselves, convinced this Court that they will continue to be fair and impartial and whatever they saw doesn't bother them.
The court elected to proceed with the current jury and not to grant a new trial. After the court's ruling, Defendant's attorney made a statement that is transcribed as "without objection"; Defendant argues that his attorney said "note my objection." The court responded "So noted."
At trial, the videotape of the transaction was played for the jury, and the tape was stopped at one point to better illustrate to the jury the face of the seller. After hearing the evidence and viewing the videotape, the jury found Defendant guilty of attempted distribution of cocaine. Thereafter, the State charged Defendant as a habitual offender. The State alleged that Defendant had five prior felony convictions, four of which were drug offenses; and, under La. R.S. 15:529.1(A)(1)(b)(ii), the court should sentence Defendant to a term of life imprisonment at hard labor under the habitual offender law.
Defendant filed motions for post-verdict judgment of acquittal and for new trial, both of which the court denied. On December 5, 2007, the court conducted an habitual offender hearing. Defendant's parole officer, Robert Mays, testified that he had supervised Defendant on a 2003 conviction for distribution of cocaine and that he had taken Defendant's fingerprints when Defendant was released from supervision in 2005. Mays identified the fingerprint card that he had prepared, and the court accepted that into evidence.
UPSO Deputy Trey Fulton testified next. Deputy Fulton explained that he had completed a 40-hour course in fingerprint identification and had testified between three and five times about fingerprint evidence in Union Parish, although he did not recall whether he testified as an expert in each of those cases. Over Defendant's objection, the court allowed the deputy to testify as an expert witness. Deputy Fulton examined the prints on the fingerprint card created by Robert Mays (Exhibit S-1) and on a bill of information for another of Defendant's prior convictions, a December 1994 conviction for possession of a firearm by a convicted felon (Exhibit S-4), and found that the prints on the two exhibits matched each other.
After hearing the testimony and examining the documentary evidence, the court concluded that the State had proven beyond a reasonable doubt that Defendant was the person convicted in the 1994 firearm case and the 2003 drug case and that the requisite time delays had not passed to *114 prevent sentencing based upon the prior offenses. The court also found that the offenses all fit within the scope of La. R.S. 15:529.1(A)(1)(b)(ii), and so the court sentenced Defendant to serve the remainder of his life in prison at hard labor without the benefit of parole. This appeal ensued.

ASSIGNMENTS OF ERROR ON APPEAL
On appeal, counsel for Defendant raises one assignment of error and Defendant, pro se, raises an additional eight assignments of error as follows (verbatim):
ASSIGNMENT RAISED BY APPELLATE COUNSEL:
1. The evidence was insufficient to support the conviction of attempted distribution of cocaine.
PRO-SE ASSIGNMENTS OF ERROR
2. The record is incomplete and inaccurate.
3. The evidence was insufficient to support the conviction of attempted distribution of cocaine.
4. Court erred by accepting state's witness as an expert.
5. Guilty pleas used to adjudicate defendant a triple offender were invalid.
6. Excessive sentence.
7. Court erred by not granting defendant's motion for mistrial. (Argued in original pro se brief and supplemental brief.)
8. Petitioner's Constitutional Rights were violated, under the sixth and fourteenth amendments, during the voir dire portion of his trial.
9. Court erred by denying defendant's motion for post verdict judgment of acquittal.

DISCUSSION
Assignment of Error 1. The evidence was insufficient to support the conviction of attempted distribution of cocaine.
Assignment of Error 3. The evidence was insufficient to support the conviction of attempted distribution of cocaine.
Assignment of error 9. Court erred by denying defendant's motion for post verdict judgment of acquittal.
Defendant challenges the sufficiency of the evidence against him. Specifically, he urges that the State presented insufficient evidence to establish that he was the person from whom Owens received the cocaine. In his pro-se assignment, Defendant also argues that the videotape played at the trial was a videotape from one of his 2003 drug convictions and did not represent what happened at the 2006 encounter with Owens. He further argues that various discrepancies in the testimony made it unreliable.
When issues are raised on appeal, both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
*115 This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 05-0477 (La.2/22/06), 922 So.2d 517; State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La. App. 2d Cir.8/30/02), 827 So.2d 508, writ denied, 02-3090 (La.11/14/03), 858 So.2d 422.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La. App. 2d Cir.9/18/02), 828 So.2d 622, writs denied, 02-2595 (La.3/28/03), 840 So.2d 566, 02-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Wiltcher, 41,981 (La.App. 2d Cir.5/9/07), 956 So.2d 769; State v. Burd, 40,480 (La.App. 2d Cir.1/27/06), 921 So.2d 219, writ denied, 06-1083 (La.11/9/06), 941 So.2d 35.
In cases involving a defendant's claim that he was not the person who committed the crime, the Jackson rationale requires the state to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Hughes, 05-0992 (La.11/29/06), 943 So.2d 1047; State v. Powell, 27,959 (La.App. 2d Cir.4/12/96), 677 So.2d 1008, writ denied, 96-1807 (La.2/21/97), 688 So.2d 520.
Deputy Harrell knew Defendant prior to this incident and recognized Defendant on the tape as the person involved in the transaction with Owens. Deputy Gilbert stated that the seller "appeared to look like [Defendant]" as the deputy watched through binoculars. Owens had known Defendant for some weeks prior to this transaction and testified that the seller was Defendant. Finally, the transaction was videotaped, and the jury had the opportunity to compare the person on the videotape with Defendant, who was present in court during the trial. Although the marked buy money was never recovered, three eyewitnesses and a videotape constitute more than sufficient evidence to prove that Defendant was the other person engaged in the transaction with Owens.
Deputy Harrell testified that the videotape in evidence was the tape of the events as they happened in 2006; he identified the tape because he wrote on the tape before it was placed into storage at the sheriff's office. There is nothing in the record to suggest that the tape was not a tape of the 2006 incident in question here.
With respect to the various discrepancies in the witnesses' testimony, the jury was made fully aware that the witnesses' memories of the event were imperfect and that their testimony had changed with regard to some details from that given at a previous hearing to that given at trial. These issues were thoroughly explored by defense counsel. The jury obviously reached a compromise verdict; but, as observed by the trial court, the evidence was sufficient to convict Defendant of the charged offense of distribution of cocaine.
These assignments of error are without merit.

*116 Assignment of Error 2. The record is incomplete and inaccurate.

Defendant complains that the record is incomplete in several instances. First, he argues that the transcript of the preliminary examination is incomplete, but a review of that portion of the record does not support Defendant's assertion; there is no evidence to suggest that the transcript omits any portion of the questioning of the witnesses. Next, he complains that there is no transcript of the first motion for mistrial. That matter was apparently conducted during voir dire, which transcript was ordered to be supplemented to this record and is now a part of the record on appeal. Third, Defendant complains that the record does not contain a transcript of a sidebar conference between his attorney, the prosecutor and the judge who discussed the procedure for "freezing" the video for the jury. Such conferences are common and are often not recorded; moreover, Defendant's attorney made no objection to the resolution reached at the conference. La. C. Cr. P. art. 841. Defendant also complains that a conference regarding the replay of the video went unrecorded, but the record does not suggest that any of the proceedings surrounding the replay of the video were omitted from the record; the court's statements to the jury and instructions to court personnel appear to be completely transcribed into the record. Finally, Defendant also complains of various alleged mis-transcriptions of what was said at several points; but, even assuming that the transcript does contain the alleged errors, he has shown no prejudice from these matters. The transcript of voir dire was the only significant missing portion of the record, and that transcript was ordered from the trial court and, as stated, was supplemented to the record on appeal.
This assignment of error is without merit.

Assignment of Error 4. Court erred by accepting state's witness as an expert.
Defendant argues that the court erred at the habitual offender hearing in accepting Deputy Fulton as an expert in fingerprint identification evidence. Defendant notes that Deputy Fulton's qualification consisted only of a 40-hour course in fingerprint identification, that Deputy Fulton was not familiar with the process by which experts are qualified at trial, and, thus, was not qualified to give an opinion about the fingerprint evidence.
Before any witness can testify as an expert, his or her competence must be established to the satisfaction of the court. A trial court has great discretion in determining the competence of an expert witness, and that determination will not be overturned absent an abuse of discretion. La. C.E. art. 702; State v. Gipson, 37,132 (La.App. 2d Cir.6/25/03), 850 So.2d 973, writ denied, 03-2238 (La.1/30/04), 865 So.2d 75. The test of competency of an expert is his knowledge of the subject about which he is called upon to express an opinion. A combination of specialized training, work experience and practical application of the expert's knowledge can combine to demonstrate that a person is an expert. Gipson, supra.
Based on a review of the deputy's testimony, the trial court did not err in accepting Deputy Fulton as an expert in this field. He was able to explain the traditional rules for fingerprint identification, including the characteristics of fingerprints and the number of matching points required to make a positive identification. Nothing in the record suggests that Deputy Fulton was not qualified to present his opinion about the fingerprint evidence, and the trial court made an adequate inquiry into the deputy's qualifications before accepting *117 him as an expert in this well-understood field. This assignment of error is without merit.

Assignment of Error 5. Guilty pleas used to adjudicate defendant a triple offender were invalid.
Defendant argues that the guilty pleas on which his prior convictions were founded were invalid. At the habitual offender hearing, however, Defendant's attorney stated:
I have gone over in detail the Boykins of all three of these  or both of these pleas  or one of them was no contest and one was a plea, and I don't  and I did not find any defects or problems in the Boykins. Our problem is primarily in the identification and the matching of the fingerprints, Your Honor.
Defendant did not make an objection under La. R.S. 15:529.1(D)(1)(b) to the validity of his prior convictions and is barred from raising that issue now. State v. Jackson, 34,378 (La.App. 2d Cir.2/28/01), 781 So.2d 705, writs denied, 01-1234, 1444 (La.3/15/02), 811 So.2d 898, 899. This assignment of error is without merit.

Assignment of Error 6. Excessive sentence.
Defendant urges that his sentence of life imprisonment at hard labor without parole is excessive. This record does not contain a motion to reconsider sentence, so La. C. Cr. P. art. 881.1 applies to Defendant's sentence, precluding him from presenting sentencing arguments to the court of appeal that were not presented to the trial court. Defendant is relegated to having the appellate court consider the bare claim of constitutional excessiveness. State v. Mims, 619 So.2d 1059 (La.1993); State v. Masters, 37,967 (La.App. 2d Cir.12/17/03), 862 So.2d 1121; State v. Duncan, 30,453 (La.App. 2d Cir.2/25/98), 707 So.2d 164.
Defendant's life sentence is the sentence mandated by the habitual offender law. In State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, the Louisiana Supreme Court explained:
A sentencing judge must always start with the presumption that a mandatory minimum sentence under the Habitual Offender Law is constitutional. A court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut this presumption of constitutionality. (Internal citations omitted.)
In the instant case, before sentencing Defendant, the court stated for the record Defendant's social and criminal history as contained in the pre-sentence investigation. The 44-year-old Defendant claimed to have worked on and off in the construction and service industries; he has three minor children. Defendant's criminal history commenced in 1980 with convictions for simple burglary; he also has a 1982 conviction for attempted possession of cocaine, a 1992 conviction for attempted distribution of cocaine, a 1993 conviction for aggravated assault, a 1994 conviction for attempted distribution of cocaine, a 1996 conviction for possession of a firearm by a convicted felon, two convictions in 2003 for distribution of cocaine and a variety of misdemeanor offenses. In each case where Defendant was placed on probation or parole, his supervision ended unsatisfactorily.
Defendant is clearly not among that small class of offenders who
[are] exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of *118 the offense, and the circumstances of the case.
State v. Young, 94-1636 (La.App. 4th Cir.10/26/95), 663 So.2d 525, writ denied, 95-3010 (La. 3/22/96), 669 So.2d 1223; cited in Johnson, supra. Defendant has not shown that his sentence is excessive, and this assignment of error is without merit.

Assignment of Error 7. Court erred by not granting defendant's motion for mistrial.
In this assignment of error, Defendant argues that the trial court should have granted his motion for mistrial based on his allegation that, at the beginning of trial, two of the jurors saw him "in full restraints" walking into the courthouse. Defendant also makes a number of other arguments based upon evidence that is not in the record, including various allegations of wrongdoing by the deputy charged with handling the jury.
In a similar case, State v. Thornton, 36,757 (La.App. 2d Cir.1/29/03), 836 So.2d 1235, writ denied, 03-0861 (La.10/31/03), 857 So.2d 474, a juror observed the defendant, who was handcuffed, being escorted by a deputy through the courthouse. The defendant moved for a mistrial, but the trial court denied the motion after questioning the juror and being convinced that the juror could remain fair and impartial despite what he had seen. This court found no merit in the defendant's assignment of error on appeal, stating:
Absent exceptional circumstances, a defendant before the court should not be shackled, handcuffed, or garbed in any manner destructive to the presumption of innocence or detrimental to the dignity and impartiality of the judicial proceedings. State v. Stephens, 412 So.2d 1057 (La.1982); State v. Plater, 26,252 (La.App. 2d Cir.09/21/94), 643 So.2d 313, writ denied, 94-2608 (La.02/03/95), 649 So.2d 402. For a finding of reversible error, the record must show an abuse of the trial court's reasonable discretion resulting in a clear prejudice to the accused. Plater, supra. The momentary use of restraints for the limited purpose of transporting the accused does not mandate a mistrial even when a juror sees a defendant being transported on two occasions. State v. Jones, 31,613 (La.App. 2d Cir.04/01/99), 733 So.2d 127, writ denied, 99-1185 (La.10/01/99), 748 So.2d 434.
In this case, the record shows that the juror momentarily observed Thornton being transported to the courtroom for trial and mentioned it to another juror. The jurisprudence is clear that such an observation under these circumstances does not mandate a mistrial. Nor has Thornton otherwise demonstrated clear prejudice as the result of this incident. When questioned, the juror was able to assure the court that he could remain impartial in rendering a verdict. Thornton presented no evidence contradicting that claim. Accordingly, we can discern no error in the denial of Thornton's mistrial request.
As noted, only one of the jurors actually saw Defendant coming into court, and that juror made no mention of handcuffs, shackles or any other type of restraint. Even if the juror had seen Defendant in restraints, the juror's answers to the court's questions were sufficient to satisfy the court that she could remain fair and impartial. After a review of the record, there is nothing to indicate that the court's decision was in error.
Defendant further argues that the court should have granted a mistrial because the jailers did not timely bring him to court. He complains that he was approximately ten to fifteen minutes late being returned to court after the lunch break. It appears, however, that the proceedings did not start until Defendant arrived, and the court observed:

*119 As far as the jury knows, his delay was not caused by incarceration. As far as they know, the defendant is out on bail. There's nothing, at least on the record, or that has appeared to the jury to indicate otherwise.
The court concluded that Defendant had not been prejudiced by his late arrival and denied Defendant's motion for mistrial over his objection. When the trial resumed, the judge essentially blamed the delay on the prosecutor and admonished him, before the jury, to be on time.
Defendant's motion for mistrial was not based on one of the mandatory grounds for mistrial in La. C. Cr. P. art. 770; therefore, it falls under La. C. Cr. P. art. 775, which provides, in part:
Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.
The determination of whether actual prejudice has occurred lies within the sound discretion of the trial judge, and this decision will not be overturned on appeal absent an abuse of that discretion. State v. Price, 40,408 (La.App. 2d Cir.12/16/05), 917 So.2d 1201, writ denied, 06-0156 (La.6/16/06), 929 So.2d 1284. A ten-minute delay in the proceedings that the judge attributed to the prosecutor and not to Defendant is hardly so prejudicial to Defendant as to warrant a mistrial; we conclude that the court handled the situation appropriately

Assignment of error number 8. Petitioner's Constitutional Rights were violated, under the sixth and fourteenth amendments, during the voir dire portion of his trial.
Defendant argues that his constitutional rights were violated because the jury consisted of only of white individuals. Defendant failed to make any objection to the jury based upon the purposeful exclusion of black jurors, which is objectionable under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) and progeny. Notably, Defendant's attorney conferred with Defendant before accepting the 12 jurors in the regular panel. Since Defendant failed to object to the composition of the jury, he is relegated to post-conviction relief with regard to this issue. Accordingly, on the record presented, we find no reversible error presented in the jury selection.

CONCLUSION
For the foregoing reasons, the conviction and sentence of Defendant, Carlos T. Lewis, are affirmed.
AFFIRMED.
APPLICATION FOR REHEARING
Before WILLIAMS, STEWART, CARAWAY, PEATROSS and LOLLEY, JJ.
Rehearing denied.